In The United States District Court

For The District of Maryland

Arthur Rodgers
Plaintiff

v.                                         Civil No. CCB-12-3778

Micheal Stallings, at al

Plaintiffs Motion and Contemporaneous Memorandum
For Access To Evidence Used To Support Defendants'
Dispositive Motions and To Oppose Those Motions

Plaintiff, Arthur Rodgers, pro se submits the above titled motion along with
an included contemporaneously supporting memorandum whereby material and
the basis for his opposition to the pending defendants' dispositive motions may
be received by the court in accordance with the permission granted by
the courts order (ECF No. 53)

1. Plaintiff seeks access to specific physical evidence provided to the court
as part of the defendants' Motion To Dismiss or Alternatively For Summary Judgment
(ECF No. 39). According to the 4th circuit's holding in Bouchat v. Balto.
Ravens Football Club, Inc. 346 F.3d 514, 525 (4th cir. 2003), the court
must abide by the "affirmative obligation of the trial judge to prevent factually
unsupported claims and defenses from proceeding to trial."
Since there exists factual disputations as to several core issues, an examination
of evidence as provided by both parties in support of each parties cause is normally
required as a matter of just adjudication.

2. As a pro se prisoner, plaintiff, I am opposing the pending motion for summary
judgement on the basis that "a party (plaintiff) has not had an opportunity to
conduct reasonable discovery" and the granting of summary judgement without
allowing a party to examine "evidence" referenced by the defendants, is both prejudicial
to plaintiff and inappropriate. See E.1. du Pont, supra 637 F.3d at 448-49

3. "The party opposing summary judgement cannot complain that summary judgement was granted without discovery unless that party made an attempt to oppose the motion on the grounds that more time was needed for discovery". See Harrods Ltd v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs Application and Servs. Co., 80 F.3d 954, 961 (4th Cir. 1996).

* In accordance with Rule 56 (d) the plaintiff previously submitted an affidavit explaining why "for specified reasons, (he) cannot present facts essential to justify (his)(complete) opposition" to the pending dispositive motion. See E.C.F. Nos. 42 and 46.

* The trial court did not believe the affidavit was particularized enough, See ECF No. 42. 1

* Plaintiff hand drafted another affidavit setting forth specified reasons as to why discovery is needed in order for plaintiff to support his averments in opposition to the pending dispositive motion, doing as much as humanly possible to mail the more thoroughly written affidavit to the court and counsel for defendants.

* The court has not acknowledged receipt of the affidavit.

* Because "Rule 56 (d), cannot simply demand discovery, for the sake of discovery" See Hamilton v. Mayor and City Council of Baltimore, 807 F. Supp. 2d 331, 342 (D. Md. 2011)(quoting Young v. U.P.S. No. DKC-08-2586 (D. Md. Feb. 14, 2011) and because the second more "particularized" affidavit has presumably not been received by the Court, plaintiff has drafted another such affidavit as permitted by the Court, in support of this Motion.

4. Factual disputes such as whether in this case an assault occurred, was the force used malicious and sadistic, as can be evinced by excessive use of force, "can only be resolved by a fact finder because they may reasonably be resolved in favor of either party, thus minus facts such as can be ascertained by a court, summary judgement prior to such discovery of facts as disputed would be prematurely unappropriate. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986)

2

5. In support of defendants' dispositive motion, defendants' counsel point to defendants' sworn statements that they have not ever committed some of the actions alleged in plaintiffs complaint. See Affidavit of Micheal Stallings wherein he states under oath that he has never used any racist comments towards plaintiff or any other inmate. Id. at 12-13. See Affidavit of Adam Whitacre wherein he states under oath that he consistently employs professionalism in all of his dealings with MBCI's inmate population.

* If the court is going to consider such sworn statements in support of a dispositive motion, surely evidence of a probative nature that would confirm or dispel allegations given in the form of plaintiffs' sworn statements would be properly sought and considered by a judge in deciding if a genuine dispute of material facts exists between the parties.

6. The Fourth Circuit has held that "evidence that would . . . confirm (or dispel) allegations pertaining to the events that form the subject of (a) lawsuit is highly probative of that" See McMillian v. Wake County Sheriff's Dept. 399 Fed Appx 824, 828-29 (4th Cir. 2010)(citing) Angle ex rel. Estate of Angle v. Yelton 439 F.3d 191, 196 (4th Cir. 2008)

* Previously filed complaints, civil actions, criminal complaints against the defendants that include the same kinds of allegations as lodged by the defendant would properly be considered by a jury as a credibility determination. Such records would also be relevant to the opposition of a summary judgement motion since such records would clearly represent support for plaintiffs assertion that there are material facts in dispute, precluding the granting of the summary judgement motion. "Credibility determinations . . . are jury functions, not those of a judge . . ." See Ray Commc'ns, Inc. v. Clear Channels Commc'ns Inc. 673 F.3d 294, 305 (4th Cir. 2012) See also Meyers v. Baltimore County ___ F.3d ___, No. 11-2192 slip op at 10-12 (4th Cir. Feb 1, 2013).

Just as defendants began the Motion to dismiss - summary judgment

memorandum (Factual Background, pg. 7) describing plaintiffs how within four days of my arrival into Division of Correction custody I was placed on disciplinary segregation status and was transferred to the former Maryland Correctional Adjustment Center, presumably to convey something about my history, likewise I would ask for access to such information that exists pertinent to the defendants actions since each has been employed at NBCI or with the DPSCS-DOC. By "actions" I specifically refer to the kinds of deeds that would be considered relevant to whether defendants as individuals or as part of a collective, is indicia of a pattern of misconduct by defendants. Such "discovery" is necessary to oppose the sworn affidavits, by way of defendants the factually supported claims made by plaintiff. Plaintiffs position as a prisoner clearly limits the kinds of information that are readily available to me on any given day, however Rule 56(d) addresses a situation such as this, as does the relevant circuit case precedent. The plaintiff requires the following information to adequately oppose the pending dispositive motions, and has included an affidavit which states with great particularity why each piece of information is needed:

1. The completed investigatory reports prepared in conjunction with every Administrative Remedy Procedure complaint, each which should include a designated case number, wherein defendants were accused of assaulting any prisoner, using profane, or vulgar language toward any prisoner, or language which is expressive of racial bigotry toward any prisoner since defendants have been employed in state service as prison employees.

2A. The preliminary review reports, responses as rendered to inmate grievants, or dismissals by Inmate Grievance Office employees, to include Scott S. Oakley, Robin Woolford, Paula Williams and Lynne Greene, pertaining to grievances submitted by (the) inmate wherein previous allegations were made alleging that inmates were beaten by prison staff, not fed, spit upon and were alleging 8th Amendment violations

4

as part of formal grievances addressed to the Inmate Grievance Office seeking a hearing on the merits. I.e. The documented records indicating how many such grievances were forwarded to the OFFICE OF Administrative Hearings for hearings on the merit, since defendant Oakley became Executive Director of the IGO.

3. The audit findings, records and/or documents compiled by DPSCS/DOC authorities which indicate the number of ARP complaints since 2008 have been submitted to NBCI's Wardens alleging that correctional staff did not process ARP's, respond to ARP's as submitted in accordance with ARP specific directives, or retaliated against prisoners for filing ARP's against staff members, alleging staff misconduct.

4. The audio recording of the Disciplinary Hearing held on July 24, 2012 wherein plaintiff was given a hearing to determine his guilt or innocence as to charges that he assaulted defendant Stallings.

5. Access to view the video footage of the incident described in the complaint to include every portion of the physical altercation from start to finish as referenced by both plaintiff and defendants.

6. Access to view video footage of Housing Unit cell #1C30 from July 11th 2012 upto and including July 15th 2012;

7. The documented IGO grievances, civil action claims, or departmental reports indicating the imposition of disciplinary action against defendants Youngblood, Stallings, Whitacre, Fortnam, ████, Soltas, Lambert, wherein they were accused, or found guilty for using excessive force, threatening language toward, or depriving a prisoner of food, medical care or access to the ARP process.

8. The number of instances wherein homicides or suspected homicides have occurred involving cellmates at NBCI, specifically, one cellmate suspected of killing another.

9. A copy of the DPSCS Use of Force Manual which describes the allowable uses of force, manner of physical strikes, holds and kicks prescribed for use on an inmate.

10. Plaintiff believes the enumerated articles of information are in and of themselves probative evidence that could establish support my opposition to the pending dispositive motions and since "a court may enter summary judgement only if there is no genuine issue of dispute as to any material fact and the moving party is entitled to the judgement as a matter of law," such evidence that exists should be examined by the court, especially in light of the nature of the lawsuit and the one sided access to the most pertinent information.

It stands to reason that if this pro se plaintiff's complaint must be "liberally construed" and that the court must construe the facts that are presented "in the light most favorable to the party opposing the motion" that the court would want whatever information that would "fairly and equitably" be used to determine if a genuine issue of dispute as to pertinent material facts exists. The court has denied plaintiff's motion for counsel (ECF No. 43) and just as I averred in the motion prison guards supportive of defendant actually took paperwork that was part of the defendants' dispositive motion from me on October 2nd 2013. See plaintiff's affidavit is enclosed.

The only reason given was, as stated by C.O. Mallow, "you shouldn't have officers' pictures, and none of this other shit has to go to Intel."

Therein lies the problem with the court choosing to ignore the necessity for more than simply acknowledging the claims render in the initial complaint, and the first amendment of it. Such actions as effectuate a roadblock to a pro se prisoner's ability to provide the court with "well pleaded' allegations" are in effect unconstitutional, and warrant the kinds of remedial action that are readily available. The information taken by prison guards on October 2nd 2013 cannot be referenced, evidence being considered by the court in support of a dispositive motion is not provided to plaintiff to possibly refute, and plaintiff has to render over all drafts to prison guards, many of whom plaintiff has notified the court are openly and unremittently

hostile toward me, and render those conditions information necessary to my opposition of the dispositive is available only to defendants who clearly have an incentive to not want plaintiff to be privy to.

As to the Motion To Dismiss, Rule 12(b)(6), such as it applies to this case clearly indicates that a motion to dismiss for failure to state a claim "should only be granted if, after accepting all well pleaded allegations in the plaintiff complaint as true and drawing all reasonable factual inferences from these facts in plaintiff favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief" Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) See also EN RE: Coventry Healthcare Inc. Sec. Litig., No. 08:09-CV-2661 (D.Md. Mar. 1, 2011) To oppose a motion to dismiss under Rule 12(b)(6) a plaintiff must plead plausible facts in support of his claim.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) Ashcroft v. Iqbal 129 S.CT. 1937 (2009) The plausibility standard requires a complaint to amplify a claim with factual allegations to render the claim plausible. Flanagan v. Anne Arundel County, et al. 593 F.Supp.2d 803, 808 (D. Md. 2009) Plausible facts are those that "raise a reasonable expectation that discovery will reveal evidence" Id at 808 (citing Twombly, 127 S.CT at 1965)

* Plaintiff is in the middle of two equally prejudicial positions. On one hand, I understand the need to present factually supported claims to this Court so as to avoid the dismissal of my lawsuit based on the Court's "affirmative obligation ... to prevent factually unsupported claims and defenses from proceeding to trial." Likewise I understand that factually supported claims require access to information completely under the custody and control of prison officials who have every incentive not to voluntarily render over such information to a pro se prison plaintiff. The prejudice factor is present in that the Court is clearly going to hold me to a standard generally reserved for

7

represented plaintiff, and require factually supported claims, while at the same time not (thus) paving the way for such support to be provided to the court, by way of discovery such as is needed prior to any summary judgement consideration.

Local Rule 104.4 does provide for the court ordering of discovery, and as has been addressed by numerous 4th circuit case precedents referenced in plaintiffs opposition to the dispositive motions (ECF No. 46) and Plaintiffs Motion To Compel (ECF No. 42) such discovery can take place. Plaintiff has included a very specific number of reasons why such discovery is needed, in the affidavit that accompanies this motion and contemporaneous memorandum.

For the reasons set forth in both the motion, contemporaneous memorandum and affidavit, the plaintiff seeks a court order compelling the the production of and plaintiffs access to the evidence - information as referenced herein, and oppose any dispositive motion as is pending upon the basis stated herein.

Respectfully Submitted,

Arthur Rodgers

Plaintiff Pro Se

NBCI 14100 Mc Mullen Hwy SW

Cumberland, Md 21502

May 12th 2014

### Certificate of Service

I hereby certify that on June 10th 2014 a copy of the enclosed Plaintiffs Motion and Contemporaneous Memorandum For Access was rendered over to NBCI correctional officers for mail delivery to defendants counsel at DPSCS, 115 Sudbrooke Lane

Sudbrooke Station - Suite A

Pikesville, Md 21208

Arthur Rodg

8

In The United States District Court
For The District of Maryland

Arthur Rodgers

Plaintiff

v.                                              Civil Action No. CCB-12-3778

Micheal Stallings, et al

Defendants

## Affidavit of Arthur Rodgers

I, Arthur Rodgers, the pro se plaintiff in the above captioned matter hereby state that I am over 21 years of age and competent to testify as follows:

1. At all times pertinent to the lodging of this civil rights complaint I have been incarcerated at North Branch Correctional Institution ("NBCI") a Maryland Division ("DOC") of Correction's prison located in Cumberland, Md.

2. At all times pertinent to the lodging and continuing litigation of this lawsuit I have been giving all of my outgoing legal mail, to include my handwritten filings intended for the presiding court to consider, to prison guards employed at NBCI to forward to the prison's mailroom whereby it would be forwarded via United States Postal Service to the Court.

3. To keep track of the outgoing legal mail I've rendered over to prison guards forwarding to the court, I keep a handwritten outgoing mail log recording the dates and names of the guards to whom I've given court filings to.

4. On numerous occasions I given various "legal mail" correspondences to various prison guards, addressed to the United States District Court, the United States Court of Appeals, for the Fourth Circuit, the Allegany County Circuit Court, the DOC Headquarters Administrative Remedy Procedure (ARP), Inmate Grievance Procedure ("IGP") Unit, and the Inmate Grievance Office ("IGO") and have recieved notice that the documents I've sent either never arrived at those intended destinations, or the complete contents of the legal mail as enclosed in the addressed envelopes weren't recieved.

5. On July 30th 2013, I gave a §1983 civil rights act complaint, drafted on pre-printed forms, that were provided by the U.S. District Court's Court of Clerk, to a prison guard, in a sealed envelope addressed to the Court. The guard's name is Michael Henderson and I was notified that the Court never recieved the filing. See enclosed exhibit "

6. On subsequent occasions I've rendered over 5 supplemental complaints per court orders, doing so on October 14th 2013, giving the supplemental complaint to a guard surnamed "Beason." The Court indicated that it had not recieved the required supplement. See enclosed exhibit "

On several dates I wrote to the Clerk of Court seeking confirmation that the supplemental complaint had been recieved; doing so on October 17th 2013 rendering it over to Beason, October 20th 2013, rendering the inquiry over to a guard surnamed Sharon, and again on November 8th 2013, rendering yet another inquiry over to a guard surnamed Harkon.

7. On December 23rd 2013 the Court indicated that the supplemental complaint had not been recieved, so in accordance with the Court's order, I once again forwarded a supplemental complaint to MBCI's Mailroom by way of a guard surnamed Hall, on January 2nd 2014. Once again the Court denies recieving that filing and even though an authentic written confirmation was provided to the Court, as provided to me by Mary Jane Rose, the supervisory mailroom clerk, the court dismissed the civil action (CCB-13-2902) because the Court did not recieve the supplemental complaint.

8. In another instance, I handwrote a supplement to the civil complaint in this matter, and detailed how prison guards Mallow, Broadwater, Bittinger, Durst, Lambert, Detrick, and Sawyers, were harassing me, refusing to process ARP complaints about the asserted harassment which included references to the civil rights lawsuit against other prison guards, giving the supplement to a prison guard surnamed Beason, on October 14th 2013. The Court has not acknowledged reciept of it.

9. The Inmate Grievance Office has consistently asserted that it has not recieved the required paperwork pertinent to the filing of grievances about mail tampering

and my placement on Administrative Segregation on October 2nd 2013. See Exhibits"

10. Because of the statements made to me by various prison guards, and the purposefully selective manner in which outgoing court filings, ARP Appeals, and Inmate Grievances are either not received or are received minus the complete sum total of paperwork. Sometimes paperwork is not returned to me.

11. Whenever I need to acquire photocopies of handwritten drafts and documents that support the factual claims I make, I have to give the documents to guards, who then are supposed to give them to whoever is my assigned case manager. The assigned case managers I've had (John C. Sindy and Charlotte Zeis, always keep such paperwork for anywhere from 3 to 7 days. See Exhibits"

12. I have been placed and maintained on administrative segregation since October 2nd 2013, after complaining about the actions of prison guards harrassing, threatening and expressing animosity toward me in connection with my litigation of this lawsuit. Initially, I was alleged to be a threat to the security of the prison. See exhibit"

13. On the 32nd day after my placement in the segregation building (Housing Unit or H.U.#1) I was reassigned from administrative segregation status to idle "status, but never moved from cell "1A20 in the segregation bldg. Conditions of confinement never changed.

14. On January 17th 2014, I was again classified as assigned to administrative segregation pending an investigation. I had never physically moved from 1A20 in H.U.#1 between October 2nd 2013 and January 17th 2014. I was never told why I was being investigated.

15. On March 20th 2014, the administrative review team recommended my removal from administrative segregation.

16. Again on April 15th 2014 a segregation review board recommended my removal from administrative segregation and I was physically moved from 1A21 to 3B31. After 5 days, I was again placed in the segregation bldg., and was informed by a guard named Johnathan Leace that a mistake had occurred in releasing me from administrative segregation.

17. On May 14th 2014, a review board once again recommended my release from

administrative segregation.

18. While housed in Housing Unit #1 I have been unable to conduct legal research, cross reference case law, confer with prisoners who are willing to provide affidavits in support of my claims about staff harassment or attain photocopies without giving drafts to prison guards.

19. Specific information provided to the Court in support of the defendants pending dispositive motions, such as video footage of the physical altercation that occurred between defendant Stalling and I, and subsequent physical assault upon my person has been denied me for inspection. I cannot refute what has been shown to the court if I can't see the footage.

20. Defendant Portones swears under oath that he never did as I allege during pertinent times between July 11th and 15th, 2012. Video footage of 1C30 in Housing Unit #1, would factually support my claims that he did commit some of the actions I allege, and is thus relevant to my opposition to the pending motions to dismiss.

21. Defendants Stalling, Portones, Whitacre have sworn never to have engaged in the kinds of behaviour I accuse them of. I need access to such records as would contradict those sworn statements and thus establish that defendants have prevaricated in sworn statements used to support the dispositive motions. Previously lodged civil complaints, grievances and ARP requests pertaining to these defendants, and also defendants Soltas, Youngblood, Lambert, as well as prison guard Dorcon, would effectively establish that my complaints alleging specific kinds of behaviour aren't singular.

22. The defendants, Oakley and Woolford have denied acting in unlawful collusion with prison officials to prevent civil rights allegations from being adjudicated by the Office of Administrative Hearings when such grievances involve prisoners being assaulted by prison guards. Such information as is relevant to the number of similar cases wherein the defendants have denied prisoners

4

such as plaintiff what Maryland law provides to all citizens would be both necessary and relevant to my opposition of defendants assertions.

23. The assertions made by me as to how frequently NBCI employees purposely hinder, prevent or engage in acts of reprisal against prisoners for lodging ARP complaints can be supported by the production of the audit findings, records, and/or documents compiled by the DOC which indicate how often prisoners at NBCI have complained about guards such as Whitacre shredding ARP complaints while acting as Housing Unit #3 Duty Sergeant. Such information would oppose what defendants allege in the motion to dismiss.

24. The accurate documented instances wherein prisoners have been killed while double cell housed in NBCI is needed to support my allegations that NBCI personnel attempted to forment such conflict between me and the prisoners with whom I've been housed. Defendants deny doing so in their dispositive motions.

25. Defendants reference the Use of Force Manual when describing the manner of physical force used to assault me on July 11, 2012. I need to refute such claims by examining the document and thus providing proof that the actions I allege occurred are not authorized under DOC policy.


I solemnly affirm under penalty of perjury that the foregoing statements are true to the best of my personal knowledge and belief.


May 16th 2014                                    Arthur Rodgers
                                                Affiant

5

Warden Bishop,                                        Feb. 6th 2014

   I'm writing to you, seeking intervention as regard an on-going problem with Case Manager John C. Bindy being purposely non-responsive to my written requests for assistance acquiring photocopies of documents I've drafted for Court. Likewise my written requests for the provision of a finance printout i.e. Six Month Average has been ignored. Finance Office personnel have notified me that I must acquire the financial statement from the Case Manager, and he being aggrieved by my past complaints about him has decided to completely ignore my requests for these services. In doing so, my access to the Courts is being hindered. I know prison wardens typically achieve great deference toward the prison staff, especially when it's a matter of a prisoner's "word" against an employee's "word". But all I want is an up to date 6 Months Average Finance printout, and the photocopying of the legal documents I've prepared and others that are pre-printed. Would you please instruct one of your subordinates to provide this service, or contact case management supervisory staff. My only other recourse is to contact the Courts and notify the presiding judge that I cannot comply with the requirements of the Court because NBCI staff aren't providing the necessary means. Warden, with all due respect, you need not take my word... no other Case Manager in NBCI has been complained about with respect to the issue presented herein as much as Mr. Bindy has. I am verifiably indigent and unable to pay for copies.

       Respectfully,
       Arthur Rodgers (250-908)
       H.U. #1

INMATE CORRESPONDENCE:
Filed the correspondence with a copy up to the Warden's Office; send correspondence with copy of routing up to Case Management to be filed in the inmate baseline. Please indicate if the inmate was notified and the date notified.

Inmate's Name: Arthur Rodgers

DOC #: 250908    HU / Cell: 1A20

Correspondence Regarding:

Photocopying

Resolution:

Please have your tier

officers give the documents

to be copied to Mr Sindy

or bring them with you

to your next scheduled

review.

Attached is your 6 month

printout.

CCB
Δ.

SIGNATURE: R.S. Rod

Date responded to: 2·27·14·

91

NORTH BRANCH
CORRECTIONAL
INSTITUTION
ASSIST WARDEN'S OFF.

## NORTH BRANCH CORRECTIONAL INSTITUTION

### Inmate Request

2014 MAY 8 PM 12 24

DATE _May 5, 2014_

**RECEIVED**

( Check One )

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Warden | ☐ | Commitment | ☐ | Case Manager |
| ☑ | Asst. Warden | ☐ | Mail Room | ☐ | Finance/Business Office |
| ☐ | Security Chief | ☐ | Psychology | ☐ | ARP Coordinator |
| ☐ | Shift Commander | ☐ | Unit Manager | ☐ | Chaplin |
| ☐ | Social Worker | ☐ | Education | ☐ | Addiction Counselor |
| ☐ | Property Room | ☐ | Food Service | | |
| | Other | | | | |

_Arthur Rodgers_               _250908_        _1 A 21_
Inmate's Name                  DOC #        HU Cell Location        Job Assignment

Request ( Print Clearly ) My request is for clarification regarding my present housing on administrative segregation status. I have been housed in Housing Unit #1 since October 2nd 2013. I've been recommended for removal from ad. seg. multiple times and physically moved after the case management team recommended my removal in April (15th) 2014, only to be brought back 5 days after I was moved on April 24th 2014. No true investigation is occurring and in reality the assignment to ad. seg. is retaliatory in nature. On August 1st 2013 I was removed from disciplinary segregation and though I filed several ARPs, I did nothing that warranted placement in ad. seg. Recently I was in general population from April 24th to April 9th 29th without any incident. Case management review teams are recommending my removal from ad. seg., no "investigation" is occurring yet I'm being held on ad. seg. My request is to know, 1. Who is supposedly investigating

### DO NOT WRITE BELOW THIS LINE

_R. Roderick CMM_                              _response_
REFERRED TO                                    FOR

_HW Armstrong, AW's office_                    _due 5-22-14_
OFFICIAL SIGNATURE                             DATE

FINAL DISPOSITION AND / OR RESPONSE TO INMATE _Your removal from Admin Seg was an error. The administration did not approve your removal and you should not have been moved out of HU1. However, due to clerical error a mistake occurred. Your Admin Seg status still remains as a result of an investigation by Lt. Harbaugh. You may write to him to request more information._

_____ CMP                     _5/13/14_
OFFICIAL ( SIGNATURE )                         DATE

C: Inmate
Casefile

*Request continued*

me 2. Why am I being investigated? 3. What has the investigation yielded in support of the supposition that it is necessary to the security of the prison that I remain housed in Housing Unit #1 indefinitely? I an presently engaged in the litigation of a civil action lawsuit against numerous uniformed correctional staff due to what occurred July 11th 2012. I believe uniformed staff are using an exaggerated concern about my "animosity toward staff" as a way of making it difficult for me to litigate the lawsuit and as a way to retaliate against me. The lack of any progress in the supposed investigation coupled with the lack of any real evidence to support my being placed on ad. seg. evinces the validity of my assertions sir. I believe a great wrong occurred on July 11th 2012 as committed by NBCI correctional staff. I am pursuing legal means of redress in accordance with the laws of the land. I received disciplinary sanctioning for whatever perceived wrong I am alleged to have committed. I lost all of my appliances, was very badly beaten and did a year on disciplinary segregation. All in response to my inquiring about an ARP, and responding to C. O. Micheal Stallings calling me a nigger and spitting on me. I'd request transfer from NBCI, even if that means out of state, if NBCI's authorities intend to continue to assert that I'a a threat to the security of the prison. It has been my experience over the course of 30 years that uniformed correctional staff often have an agenda that is wholly different from the administrative agenda. There are a great multitude of investigations going on supposedly and in truth none at all. It appears that the unfortunate occurrence of 2013, wherein a correctional officer was harmed without being notified that a note was written to the former chief of security, is being used by uniformed staff to ad. seg. prisoners as reprisal not to curtail real threats. "Sed quis custodiet ipsos custodes?"

*Respectfully*

Appendix 2 to CMM-05

Maryland Division of Correction
**Waiver and Notification of Case Management Action**

Name:  Arthur Rodgers _____  DOC #:  250908 ___  Inst.:  NBCI ___  Housing:  1-A-20b ___

**Section I:  Waiver of Appearance**

  I,  _____  do not wish to appear before
        (print name and number)
case Management on _____  for consideration of the following action:

_____

_____

                          _____
                          Signature          DOC Number          Date

Witness:  _____
• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •
**Section II:  Inmate Notification of Case Management Action**

Name:  _____  DOC #:  _____  Inst.:  _____  Housing:  _____

            ☒ Team Review            ☐ Administrative Assignment

  On  11/5/13 _____ , Case Management recommended the following:
            Reassign from Admin. Seg to IDLE. Remove from Admin. Seg.

_____

Comments:  _____

_____

On review, the warden/designee ☒approved ☐disapproved ☐ordered further proceedings

Rationale:  _____

_____

Copy sent to inmate by  D. Becker, OSII _____     Date:  11/7/2013 _____
                        Name/Title

Distribution:
        Original:  Inmate Record
        Copy:  Inmate

(Revised 3-10)

Appendix 2 to CMM-05

Maryland Division of Correction
## Waiver and Notification of Case Management Action

Name: Arthur Rodgers          DOC #: 250908    Inst.:  NBCI    Housing: 1A20B

### Section I:  Waiver of Appearance

I, _____ do not wish to appear before
        (print name and number)

case Management on _____ for consideration of the following action:

_____

_____
Signature                DOC Number           Date

Witness: _____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

### Section II:  Inmate Notification of Case Management Action

Name: _____ DOC #: _____ Inst.: _____ Housing: _____

☐ Team Review          ☒ Administrative Assignment

On __01/23/2014____ , Case Management recommended the following:
        Reassign from Idle to Admin Seg

_____

Comments: _____

_____

On review, the warden/designee ☒approved ☐disapproved ☐ordered further proceedings

Rationale: _____

_____

Copy sent to inmate by __R. Crosten, OSI_____     Date: _01/23/2014_____
                        Name/Title

Distribution:
        Original:  Inmate Record
        Copy: Inmate

(Revised 3-10)

Appendix 2 to CMM-05

Maryland Division of Correction
# Waiver and Notification of Case Management Action

Name: Arthur Rodgers_____   DOC #: 250908___ Inst.: __NBCI__   Housing: A20B__

## Section I:  Waiver of Appearance

I, _____   do not wish to appear before
 (print name and number)
case Management on _____   for consideration of the following action:

_____

_____

_____
　　　　　　　　　　　　　　Signature　　　　DOC Number　　　Date

Witness: _____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## Section II:  Inmate Notification of Case Management Action

Name: _____   DOC #: _____   Inst.: _____   Housing: _____

　　　　　　☐ Team Review　　　☒ Administrative Assignment

On  __2/26/2014__ , Case Management recommended the following:
　　　Remain on Admin Seg

_____

Comments: _____

_____

On review, the warden/designee ☒approved ☐disapproved ☐ordered further proceedings

Rationale: _____

New operational practices and procedures are in place regarding all institutional jobs and
positions

Copy sent to inmate by  __R. Crosten, OSI_____   Date: __02/27/2014_____
　　　　　　　　　　　　　　Name/Title

Distribution:
　　　Original:  Inmate Record
　　　Copy:  Inmate

(Revised 3-10)

Appendix 2 to CMM-05

Maryland Division of Correction
## Waiver and Notification of Case Management Action

Name: Arthur Rodgers     DOC #: 250908     Inst.:  NBCI     Housing: 1A21B

### Section I:  Waiver of Appearance

I, _____  do not wish to appear before
              (print name and number)
case Management on _____  for consideration of the following action:

_____

_____
                         Signature              DOC Number          Date

Witness: _____
• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

### Section II:  Inmate Notification of Case Management Action

Name: _____  DOC #: _____  Inst.: _____  Housing: _____

☐ Team Review          ☒ Administrative Assignment

On  03/20/2014_____ , Case Management recommended the following:
        Reassign from Admin Seg to Unassigned

_____

Comments: _____

_____

On review, the warden/designee ☐approved ☒disapproved ☐ordered further proceedings

Rationale: _____

Remain assigned to Admin Seg_____

Copy sent to inmate by   R. Crosten, OSI_____     Date:  03/20/2014_____
                              Name/Title

Distribution:
       Original:  Inmate Record
       Copy:  Inmate

(Revised 3-10)

Appendix 2 to CMM-05

Maryland Division of Correction
# Waiver and Notification of Case Management Action

Name: __Arthur Rodgers__   DOC #: __250908__   Inst.: __NBCI__   Housing: __1A21B__

## Section I:  Waiver of Appearance

    I, _____ do not wish to appear before
                (print name and number)
case Management on          for consideration of the following action:

_____

_____
                       Signature         DOC Number      Date

Witness: _____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## Section II:  Inmate Notification of Case Management Action

Name: _____  DOC #: _____  Inst.: _____  Housing: _____

        ☐ Team Review        ☒ Administrative Assignment

  On __04/15/2014__ , Case Management recommended the following:
    Reassign from Admin Seg to Unassigned

_____

Comments: _____

_____

On review, the warden/designee ☒approved ☐disapproved ☐ordered further proceedings

Rationale: _Done in error remain Admin Seg. RIC_

_____

Copy sent to inmate by __R. Crosten, OSI__      Date: __04/22/2014__
                     Name/Title

Distribution:
    Original:  Inmate Record
    Copy:  Inmate

(Revised 3-10)

Appendix 2 to CMM-05

Maryland Division of Correction
## Waiver and Notification of Case Management Action

Name: Arthur Rodgers          DOC #: 250908    Inst.: NBCI    Housing: 1-A-2/B-1

### Section I:  Waiver of Appearance

I, _____ do not wish to appear before
       (print name and number)
case Management on _____ for consideration of the following action:

_____

_____

                         _____
                         Signature          DOC Number          Date

Witness: _____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

### Section II:  Inmate Notification of Case Management Action

Name: _____ DOC #: _____ Inst.: _____ Housing: _____

          ☒ Team Review          ☐ Administrative Assignment

On   04/28/2014   , Case Management recommended the following:
          Reassign from Unassigned to Job Bank Sanitation

_____

Comments: _____

_____

On review, the warden/designee ☒approved ☒disapproved ☐ordered further proceedings

Rationale: _____

Reassign to Admin Seg
_____

Copy sent to inmate by   R. Crosten, OSI          Date:  04/28/2014
                         Name/Title

Distribution:
          Original:  Inmate Record
          Copy:  Inmate

(Revised 3-10)

# NOTICE OF ASSIGNMENT
## TO
## ADMINISTRATIVE SEGREGATION

*/ A 20*

INSTITUTION: ___NBCI___                    DATE: __1/17/14__

___Rodgers, Arthur___                    ___250___
Last Name        First Name        M.I.                 DOC Number

__1/17/14  9:52 Am__  __R. Stotler Com__
Date/Time of Placement

__RR WODCa__
Per

    It has been determined that reasons exist (as categorized below) to remove you from the general population and assign you to administrative segregation pending review of the circumstances and case management team action. You will be seen by the case management team within five days of your placement on administrative segregation (excluding weekends and holidays) and given the opportunity to be heard as to whether or not you should be continued in this status.

**Reason** (check applicable category /s)

[  ]    Reasons exist to believe that you are an escape risk.

[  ]    Reasons exist to believe that you are dangerous to the security of the institution and/or inmates and/or staff.

[ X ]    An investigation is pending in your case.

[  ]    You are being considered for placement on voluntary or involuntary protective custody.

[  ]    There are medical or psychological reasons, as determined by a health care provider, that require your removal from general population.

[  ]    Your continued behavior documents that you are not able to conform to the rules and regulations of the institution and/or the Division of Correction.

[  ]    Other (specify) _____

                       _____

                          I have read (or have had read to me) and
                          acknowledge receipt of a copy of this notice.

                          _____
                          Inmate Signature

**Distribution:**

    Original:  Classification                    Notice Served by: ___Point Sgt___
         Copy:  Inmate

                            Date/Time: __1-17-14   11:51 AM__

DC Form 100 - 132a (Rev. Apr - 08)